UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JOSEFINA RODRÍGUEZ-BIRD,

    Plaintiff,

v.

SANTANDER SECURITIES CORP. and
ARTURO COLÓN,

    Defendants.

Civil No. 09-2238 (JAF)

**OPINION AND ORDER**

Plaintiff, Josefina Rodríguez-Bird, brings the present action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), against Defendants Santander Securities Corp. ("Santander") and Arturo Colón. (Docket No. 1.) Santander moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 9.) Plaintiff opposes. (Docket No. 15.) Santander replies in support of the motion to dismiss. (Docket No. 21.)

**I.**

**Factual and Procedural Synopsis**

We derive the following facts from Plaintiff's complaint (Docket No. 1) . Plaintiff is a retiree who invested her life's savings, $455,000, with UBS investment bank. Defendant Arturo Colón managed Plaintiff's funds at UBS. When Colón left UBS for a position with Defendant Santander Securities Corporation ("Santander"), he asked Plaintiff to transfer her funds to Santander. On April 16, 2004, Plaintiff signed an agreement (Docket No. 24-1) opening a margin account with Santander. Plaintiff alleges that she did not have a basic understanding

of what a margin account was or the risks involved. She contends that Defendants took advantage of her and, through various misrepresentations, caused her to invest her retirement savings in a risky margin account. Furthermore, Plaintiff alleges that the paperwork she signed, opening a new margin account, was blank and that Colón later filled in the form with fraudulent information. For instance, her annual income was listed as $85,000, when in actuality it was closer to $35,000. In addition, Plaintiff's liquid net worth was misstated at $1,700,000 as opposed to $455,000. Finally, the margin account opening form stated that she had six years of investment experience when she really had none. Plaintiff was required to acknowledge the receipt of a copy of a pre-dispute arbitration agreement, which she allegedly did not receive.

Plaintiff alleges that, owing to continued misrepresentations and acts of churning[1] by Defendants, her account dwindled from $455,000 to $8,000. On December 11, 2009, Plaintiff filed a complaint in this court, invoking the Securities Exchange Act's prohibition on the use of manipulative or deceptive devices in buying or selling securities. See 15 U.S.C. § 78j(b). Santander moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) and to compel arbitration, arguing that Plaintiff had signed a valid arbitration agreement. (Docket No. 9.) Colón joins Santander's motion. (Docket No. 11.) Plaintiff opposed Defendants' motion to dismiss, claiming that she had never seen the arbitration agreement and that the

---

[1] "A stockbroker's excessive trading of a customer's account to earn more commissions rather than to further the customer's interests; an abuse of a customer's confidence for personal gain by frequent and numerous transactions, disproportionate to the size and nature of the customer's account." Black's Law Dictionary 275 (9th ed. 2009).

Civil No. 09-2238 (JAF) -3-

agreement was entered into fraudulently. (Docket No. 15.) Santander replied to Plaintiff's opposition. (Docket No. 21.)

## II.

### **Standard for Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the enforcement of most arbitration agreements by federal courts and embodies a federal policy strongly favoring the enforcement of arbitration agreements. See, e.g., Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551–52 (1st Cir. 2005) (discussing federal policy). In granting a motion to compel arbitration, we must determine that an arbitration agreement exists; that the claims before us fall within the scope of said agreement; and that the movant has not waived its arbitral rights. See Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008). The threshold inquiry, whether a valid agreement to arbitrate exists, is a question of state law to be determined by the court. Campbell, 407 F.3d at 552. In making this determination, we view an arbitration clause as severable from the contract as a whole. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967). While we are empowered to adjudicate challenges to the validity of an arbitration clause itself, we must reserve challenges to the general validity of a contract for the consideration of an arbitrator in the first instance. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–446 (2006); see also Sleeper Farms v. Agway, Inc., 506 F.3d. 98, 103 (1st Cir. 2007) (holding that federal courts must enforce an arbitration clause even if the larger contract is otherwise void or voidable).

If we grant a motion to compel arbitration, we must stay proceedings on all arbitrable claims. See 9 U.S.C. § 3. In a case over which we have jurisdiction under 28 U.S.C. § 1331, a finding that all federal claims are arbitrable, such that we have only supplemental jurisdiction over the remaining claims, allows us to dismiss the case in its entirety. See Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998).

### III.

### Analysis

Plaintiff asserts three theories as to why arbitration should not be compelled: (1) she was not shown and she did not read a copy of the arbitration agreement before signing it; (2) the arbitration agreement was fraudulent due to the misinformation contained in the new account form; and (3) the arbitration clause is unconscionable. All three pertain to the first prong of any arbitration analysis under the FAA[2]— the existence of an arbitration agreement.[3]

As a preliminary matter, we note that the arbitration clause is a facially-valid contract. Puerto Rico law states that a valid bilateral contract is formed when consenting parties agree to a definite object, so long as each party gives consideration for the object of the contract. See 31 L.P.R.A. §§ 3391, 3341 (1990). Plaintiff and Defendants consented to a definite object, to arbitrate any disagreements that may arise between them over the account Plaintiff was opening.

---

[2] Neither party challenges the applicability of the FAA to this contract to open a securities trading account; a contract that clearly implicates interstate commerce. See 9 U.S.C. § 2.

[3] Plaintiff makes no argument that the claims at issue fall outside of the scope of the arbitration clause. The clause is broadly worded and covers "any controversy between us arising out of . . . this agreement." (Docket No. 24-1.) Nor has there been any indication of waiver. Plaintiff submitted a demand letter raising only the possibility of mediation (Docket No. 15-4), to which Defendants did not respond.

The consideration for this agreement was the waiver of the right to litigate their disputes in a court of law.

First, Plaintiff alleges that the arbitration agreement is void because she was never shown a copy of it. (Docket No. 1.) The "New Account Form" signed by Plaintiff when transferring her funds to Santander includes the following language directly above her signature: "Please review your information, read the Agreement on page 8, and sign below. Keep a copy for your records. **NOTE:** This document contains a predispute arbitration clause, which appears on page 8 in paragraphs 13 and 14." (Docket No. 24-1 at 7 (emphasis in original).) Plaintiff has not disputed the authenticity of her signature immediately following this language, only that she never received the eighth page of the agreement containing the arbitration clause.

Puerto Rico's Civil Code stipulates that a party's consent to a contract will be void only when "given by error, under violence, by intimidation, or deceit." 31 L.P.R.A. § 3404. Plaintiff has not alleged that she signed the contract under intimidation or threat of violence. As for deceit, we fail to see how Defendants could have deceitfully withheld page eight, when the language above Plaintiff's signature put her on notice that she was consenting to an arbitration agreement printed on a separate page. To the extent Plaintiff claims her consent is void because of error, we find that it is not the type of "excusable error" that would void consent under Puerto Rico law. See Capó v. Ramos, 83 P.R. 625, 649 (1961). An error is inexcusable—and thus cannot void consent—if the "ignorance of the true state of . . . things is due to negligence or fault of the one who invokes it." Id. Here, the form signed by Plaintiff clearly instructed her to read page eight before signing, and specifically warned that an arbitration clause was

Civil No. 09-2238 (JAF)                                                                                                         -6-

contained therein. If the application Plaintiff signed was missing page eight, the onus was on her to request a copy to read before signing.

Plaintiff's second argument is that the arbitration agreement should not be enforced because it was fraudulent. This argument, however, goes to the larger contract, and not to the arbitration clause specifically. Plaintiff argues that inflated financial figures in the application were fraudulent and render the contract invalid. Under Puerto Rico law, a contract may be invalid if consented to as a result of deceit. 31 L.P.R.A. §§ 3404, 3408, 3409. Deceit is present where "by words or insidious machinations on the part of one of the contracting parties[,] the other is induced to execute a contract which without them he would not have made." § 3408. But the law also draws a distinction between serious deceits and incidental deceits; only serious deceits will nullify a contract. § 3409. A serious deceit is one that is necessary to a party's consent and results in nullity, while an incidental deceit merely influences consent and gives rise to a claim for damages. See P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 92 (D.P.R. 1997) (discussing liability for fraud in the formation of a contract under Puerto Rico law).

We must determine whether Plaintiff's misrepresented financial figures and investment experience on Santander's new account form were the determining factor in Plaintiff's consent to the arbitration agreement. While Defendants may have falsified certain aspects of the new account application, this does not affect the arbitration clause, which the Supreme Court has repeatedly stated is "severable from the remainder of the contract." Buckeye Check Cashing, Inc., 546 U.S. at 445. We have already determined that the arbitration agreement was, on its

face, a valid contract under Puerto Rico law. Potential misrepresentations of Plaintiff's financial information concerned neither the object of nor the consideration for the arbitration agreement—an agreement to arbitrate and a waiver of the right to litigate, respectively. As a result, any fraud or misrepresentation of Plaintiff's financial information or investment experience in the larger contract was not determinative of her consent to the arbitration clause.

Finally, Plaintiff argues that the arbitration clause is unconscionable and, thus, invalid. Plaintiff's argument boils down to a contention that enforcing an arbitration agreement in light of potential fraud in a larger contract is unconscionable. But Plaintiff has not pointed to, and we have not found, any authority for the proposition that unconscionability may release a party from contract under Puerto Rico law. Rather, Plaintiff argues that such considerations are encompassed in the civil law's background requirement of good faith in contracting. See, e.g., Velilla v. Pueblo Supermarkets, Inc., 111 P.R. Offic. Trans. 732, 735–36 (1981) ("We hold that the requirement of good faith is also a general requirement of our Law and that, as such, it extends to our whole legal system. The ethical content of each act should be examined in the light of its particular circumstances."). Considering that the arbitration clause must be viewed independently from the rest of the contract, and any fraud therein, we find no bad faith in the Defendants' use of this boilerplate arbitration agreement when opening new accounts. It is a standard agreement that is accepted in numerous transactions throughout our daily lives. We reject this invitation to impute bad faith in the use of such an arbitration clause. Granted, there may have been bad faith involved in Defendants' entering into the contract as a whole, wherein

Civil No. 09-2238 (JAF)                                                                                                       -8-

a retiree may have been duped into investing her life savings in a high-risk margin account. But that is a determination to be made by the arbitrator in the first instance.

Jurisdiction in this case was premised on a single federal claim, which we have found arbitrable. We, therefore, have discretion to dismiss the case in its entirety regardless of the FAA's mandate to stay arbitrable claims. See Bercovitch, 133 F.3d at 156 n.21.

### IV.

### Conclusion

For the reasons stated herein, we hereby **DISMISS** Plaintiff's claims against Defendants Santander and Colón without prejudice, instructing that the matter be placed in arbitration. Upon termination of the arbitration process, the court may reopen the case to enforce the arbitration award.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 17th day of June, 2010.

                                                    s/José Antonio Fusté
                                                    JOSE ANTONIO FUSTE
                                                    Chief U.S. District Judge